**Gordon LEE, Individually and as Owner of Legends Bookstore, Plaintiff,**

v.

**CITY OF ROME, GEORGIA, Steve Lanier, in his official capacity of Floyd County District Attorney, et al., Defendants.**

**Civ. A. No. 4:93–cv–257–HLM.**

United States District Court,
N.D. Georgia,
Rome Division.

July 29, 1994.

---

Michael Raymond Hauptman, Hauptman & Rothstein, Atlanta, GA, Gerald R. Weber, American Civ. Liberties Union, Atlanta, GA, Paul Ray Cadle, Jr., Office of Paul Ray Cadle, Rome, GA, for plaintiff.

Robert Maddox Brinson, Ivy Stewart Duggan, Brinson Askew Berry Siegler, Richardson & Davis, Rome, GA, for City of Rome, Ga., Hubert Smith and Marshall Smith.

J. Clinton Sumner, Jr., Kay Ann King, Rogers Magruder Sumner & Brinson, Rome, GA, for Steve Lanier.

## ORDER

HAROLD L. MURPHY, District Judge.

This civil rights action is before the Court on Plaintiff's Motion to Compel, Defendant Steve Lanier's Motion to Dismiss or Abate, and Defendant Lanier's Motion to Extend Discovery. The Court denies all motions and orders Defendant Lanier to return Plaintiff's materials.

## BACKGROUND

On November 1, 1991 Sandra Allen purchased six comic books, two of which were adult-only, from Plaintiff's business, Legend Bookstore. The two adult books were entitled *Debbie Does Dallas* and *Final Taboo.* Ms. Allen took the books to Rome Police Officer Marshall Smith. Officer Smith presented these two books to Floyd County Superior Court Judge Robert Salmon.

Judge Salmon was presented with the two books and an affidavit stating

Affiant has probable cause to believe that [Ponorographic] [sic] Materials are being sold at the Legend, that is operated by Gordon Lee; namely books and tapes of Adults and Children. On November 1, 1991 at 12:30 PM, Sandra Allen purchased two ponorographic [sic] books, these two books were on open display at the Legend, in plain view of Adults and Children the Son of Sandra Allen a juvenile purchased a ponorographic [sic] book at the Legend. Detective Hill received information from a concerned Citizen she has known in the

community to be truthfull [sic] and states that Childrens Ponor [sic] Tapes are being sold at the Legend.[1]

Based upon the two books and the affidavit, Judge Salmon issued a search warrant for Plaintiff's business.

Rome police officers executed the warrant on November 1 and seized some three hundred allegedly obscene books and magazines from Plaintiff's place of business. These materials were seized without a prior judicial determination of obscenity. To date no judicial determination of obscenity has been conducted. Plaintiff was arrested.

On January 22, 1993 Floyd County Superior Court Judge Walter Matthews conducted a hearing on Plaintiff's Motion to Suppress the seized materials and the purchased materials for purposes of Plaintiff's state criminal trial. Judge Matthews denied the motion with regard to the purchased materials and did not reach the issue of the seized materials.

Prior to trial on February 18, 1991, Judge Matthews ruled that the State could not use the seized materials. Judge Matthews did not hear evidence on the search and seizure and expressly refused to reach the constitutional questions.

Judge Matthews also ruled that obscene materials are "contraband as a matter of law," and if the "State" determines materials are obscene it need not return them, and likened them to drugs.[2] Judge Matthews ruled that if Plaintiff felt the materials were being improperly withheld, Plaintiff could file a motion, and he would preliminarily review the materials. Judge Matthews noted that if Plaintiff disagreed with his determination he may have to file a separate lawsuit to allow a jury to decide the obscenity issue. To date Judge Matthews has not reviewed the materials, despite a motion by Plaintiff for return of the materials.

Plaintiff was convicted of distributing obscene material. His conviction was based upon the two comic books purchased and given to the Rome Police.

On June 9, 1993 Plaintiff filed a Post–Trial Motion for Return of Physical Evidence, which is encaptioned with the case number of Plaintiff's criminal action. The motion has never been ruled upon. At some point thereafter, Plaintiff appealed his criminal conviction to the Georgia Court of Appeals, which affirmed the conviction. *See Lee v. State,* 214 Ga.App. 164, 447 S.E.2d 323 (1994). Neither the constitutionality of the search and seizure, nor the propriety of Defendant's retention of the materials was before the Georgia Court of Appeals. *See id.,* 447 S.E.2d at 324.

On September 3, 1993 Plaintiff filed a section 1983 action seeking damages and injunctive and declaratory relief.

Plaintiff moves to compel Defendant to produce a list of the seized items. Defendant moves the Court to extend discovery and to abstain from considering the merits based upon principles announced in *Younger v. Harris.*

### MOTION TO COMPEL

Plaintiff moved for production of a list of all seized items. Defendant Lanier initially objected on a number of grounds. After deposing Plaintiff, Defendant withdrew his objections and produced the material. The Court concludes that Plaintiff's motion is moot.

### MOTION TO EXTEND DISCOVERY

On June 10, 1994 Defendant requested a discovery extension through August 25, 1994. Defendant argues that Plaintiff's May 31, 1994 deposition lead to the need for further discovery regarding Plaintiff's damages claims. Plaintiff objects to a further extension and argues sufficient discovery has been conducted.

The Court notes that no damages are sought against Defendant Lanier, and there-

---

1. The Court notes that Plaintiff's Complaint purports to attach the warrant, but did not. The parties, however, have not disputed the warrant affidavit's content.

2. The Court notes that the United State Supreme Court has disapproved such an analogy. *See Marcus v. Search Warrant,* 367 U.S. 717, 730–31, 81 S.Ct. 1708, 1715–16, 6 L.Ed.2d 1127 (1961).

fore, concludes that a discovery extension is unnecessary.

## ABSTENTION AND OBSCENITY

■ Under *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), notions of comity and federalism preclude federal courts from interfering in state criminal proceedings "except under extraordinary circumstances where the danger of irreparable loss is great and immediate." *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 600, 95 S.Ct. 1200, 1206, 43 L.Ed.2d 482 (1975) (quoting *Fenner v. Boykin*, 271 U.S. 240, 243, 46 S.Ct. 492, 493, 70 L.Ed. 927 (1926)). Federal courts may not enjoin district attorneys from prosecuting a pending action, *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971); suppress unconstitutionally obtained evidence, *Kugler v. Helfant*, 421 U.S. 117, 130, 95 S.Ct. 1524, 1533–34, 44 L.Ed.2d 15 (1975); or interfere in a manner which hinders the orderly course of state prosecutions. *O'Shea v. Littleton*, 414 U.S. 488, 500, 94 S.Ct. 669, 678, 38 L.Ed.2d 674 (1974). The prohibition on federal court interference has been extended to civil actions in which the state is a party and which are "in aid of and closely related to criminal statutes which prohibit the dissemination of obscene materials." *Huffman*, 420 U.S. at 604, 95 S.Ct. at 1208.[3] *Younger* has been further extended to civil actions between purely private parties when state judicial interests are sufficiently important. *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 14, 107 S.Ct. 1519, 1527–28, 95 L.Ed.2d 1 (1987).

■ The *Younger* doctrine, however, does not preclude all federal court involvement any time there may be state proceedings, and certain conditions must exist for its application. First, a state judicial action must be pending. *See Huffman*, 420 U.S. at 603, 95 S.Ct. at 1207–08 (noting that without a pending action there is no duplication of effort or interference with state enforcement of constitutional guarantees). Second, the pending action must implicate an important state interest. *See Pennzoil*, 481 U.S. at 13, 107 S.Ct. at 1527. Third, the state action must be capable of addressing the federal constitutional question. *See Id.* at 14–15, 107 S.Ct. at 1527–28.

■ A federal court, however, need not abstain when the only action requested of the Court is to compel the return of illegally seized allegedly obscene materials. *Gable v. Jenkins*, 309 F.Supp. 998, 1001 (N.D.Ga.1969) (citing and quoting *Carter v. Gautier*, 305 F.Supp. 1098, 1100, 1101 (M.D.Ga.1969)), *aff'd* 397 U.S. 592, 90 S.Ct. 1351, 25 L.Ed.2d 595 (1970); *Cinema Classics, Ltd. v. Busch*, 339 F.Supp. 43, 49 (C.D.Cal. (1972), *aff'd*, 409 U.S. 807, 93 S.Ct. 105, 34 L.Ed.2d 66 (1973); *Star Distributors, Ltd. v. Hogan*, 337 F.Supp. 1362, 1365 (S.D.N.Y. (1972); *Sooner State News Agency, Inc. v. Fallis*, 367 F.Supp. 523, 528–29 (N.D.Okla.1973); *Overstock Book Co. v. Barry*, 436 F.2d 1289, 1296 (2d Cir.1970); *Cambist Films, Inc. v. Duggan*, 420 F.2d 687, 689 (3rd Cir.1969); *cf. G.I. Distributors, Inc. v. Murphy*, 336 F.Supp. 1036, 1037 (S.D.N.Y.), *rev'd*, 469 F.2d 752 (2d Cir.1972), *vacated*, 413 U.S. 913, 93 S.Ct. 3056, 37 L.Ed.2d 1033 (1973), *aff'd*, 490 F.2d 1167 (2d Cir.1973) (involving eighteen hour "quarantine" of materials before hearing could be held).[4]

■ In order for a seizure of allegedly obscene materials to be constitutional there usually must be an adversary pre-seizure hearing. *See Peachtree News Co. v. Slaton*, 226 Ga. 471, 473, 175 S.E.2d 539 (1970) (citing *A Quantity of Books v. Kansas*, 378 U.S. 205, 84 S.Ct. 1723, 12 L.Ed.2d 809 (1964)); *A Quantity of Books v. Kansas*, 378 U.S. 205, 210, 213, 84 S.Ct. 1723, 1725–26, 1727, 12 L.Ed.2d 809 (1964) (plurality opinion). A pre-seizure hearing is not required *only* if (1)

---

3. The holding of *Huffman* is not limited to obscenity cases, but an obscenity nuisance statute was at issue therein.

4. The circumstances in this case differ markedly from *Hicks v. Miranda*, 422 U.S. 332, 95 S.Ct. 2281, 45 L.Ed.2d 223 (1975). In *Hicks* a theater owner, whose employees faced state obscenity charges, sought return of his material prior to the state criminal proceeding. In this case the criminal proceeding is completed. Moreover, in *Hicks* the materials had been constitutionally seized and were to be used in a criminal prosecution. Such are not the circumstances of this case.

the seizure is for a limited purpose, such as preserving evidence; (2) continued distribution of the work seized is *not* halted prior to a full judicial determination of the materials' obscenity; and (3) the full adversary proceeding occurs within a short time. *See Heller v. New York*, 413 U.S. 483, 489–90, 93 S.Ct. 2789, 2793, 37 L.Ed.2d 745 (1973).

■ A warrant to seize allegedly obscene books cannot issue on the conclusory opinion of a police officer that the materials are obscene. *Roaden v. Kentucky*, 413 U.S. 496, 502, 93 S.Ct. 2796, 2800, 37 L.Ed.2d 757 (1973). Before materials can be seized, the materials to be seized must be reviewed by a judicial officer. *Id.* A constitutionally sufficient seizure of allegedly obscene materials requires some judicial scrutiny of the materials themselves, either before the seizure, or immediately after. *See A Quantity of Books*, 378 U.S. at 213, 84 S.Ct. at 1727; *Heller*, 413 U.S. at 489–90, 93 S.Ct. at 2793–94; *G.I. Distributors*, 490 F.2d 1167, 1168–69 (hearing to determine probable cause of obscenity held the morning after works quarantined).

■ If there is no pre-seizure hearing and the Defendant state actor retains the materials without the constitutionally required hearing, a federal court order to return them is appropriate. *Gable v. Jenkins*, 309 F.Supp. 998, 1001 (N.D.Ga.1969), *aff'd* 397 U.S. 592, 90 S.Ct. 1351, 25 L.Ed.2d 595 (1970); *Cinema Classics, Ltd. v. Busch*, 339 F.Supp. 43, 49 (C.D.Cal. (1972), *aff'd*, 409 U.S. 807, 93 S.Ct. 105, 34 L.Ed.2d 66 (1973); *see Skyywalker Records, Inc. v. Navarro*, 739 F.Supp. 578, 603 (S.D.Fla.1990) (citing cases) (district court ordered return of seized materials despite concluding they were obscene), *rev'd on other grounds*, 960 F.2d 134, (11th Cir.1991) (appellate court reversed finding of obscenity).

### RELEVANT GEORGIA LAW

■ "Any materials *declared* to be obscene" by this part and advertisements for such materials are declared to be contraband. O.C.G.A. § 16–12–83 (emphasis supplied). Under Georgia law, obscene materials are not contraband per se. *Warshaw v. Eastman Kodak, Inc.*, 148 Ga.App. 670, 671, 252 S.E.2d 182 (1979). Materials become contraband when they are declared obscene by a fact finder or through a pre-seizure adversary hearing. *See Peachtree News Co. v. Slaton*, 226 Ga. 471, 473, 175 S.E.2d 539 (1970) (citing cases); *Seaman v. State*, 196 Ga.App. 634, 635, 396 S.E.2d 525 (1990).

■ Under Georgia law, allegedly obscene materials seized without a "constitutionally sufficient warrant" are not admissible in a criminal action. *Hall v. State*, 139 Ga.App. 488, 489, 229 S.E.2d 12 (1976); *State v. Smalley*, 138 Ga.App. 747, 748, 227 S.E.2d 488 (1976). As the Georgia Court of Appeals begrudgingly held, in affirming a grant of a suppression motion

> Unfortunately, the Georgia courts are bound by the interpretation of the First Amendment as to freedom of speech by the United States Supreme Court in regards to safeguards of possible nonobscene materials. Police officers may not indiscriminately seize as contraband items they consider as obscene publications without adequate safeguards to assure constitutional protection to possible nonobscene material. The owner of the property must be afforded an adversary hearing as to obscenity before the warrant issues to seize obscene material.

*Smalley*, 138 Ga.App. at 748–49, 227 S.E.2d 488 (citing *Marcus v. Search Warrant*, 367 U.S. 717, 729–38, 81 S.Ct. 1708, 1714–19, 6 L.Ed.2d 1127 (1961); *Quantity of Books v. Kansas*, 378 U.S. 205, 84 S.Ct. 1723, 12 L.Ed.2d 809 (1964); *Heller v. New York*, 413 U.S. 483, 488–93, 93 S.Ct. 2789, 2792–95, 37 L.Ed.2d 745 (1973); *Paris Adult Theatre I v. Slaton*, 413 U.S. 49, 54–55, 93 S.Ct. 2628, 2633–34, 37 L.Ed.2d 446 (1973); *Roaden v. Kentucky*, 413 U.S. 496, 93 S.Ct. 2796, 37 L.Ed.2d 757 (1973)).

### DISCUSSION

■ Defendant argues that this Court should abstain from consideration of this case. Defendant argues that Plaintiff's Post-trial Motion for Return of Evidence instigated, or continued, a quasi-criminal state proceeding with which this Court would inappropriately interfere if this Court considers the merits of this action. Defendant argues that

the state has an important interest in designating obscene materials as such and declaring them contraband. Plaintiff argues that there is no pending state proceeding implicating important state interests. Plaintiff also argues that the constitutionality of the search and seizure are not before any state court. Plaintiff also argues that Defendant has waived the abstention argument by failing to raise ·it previously.

The Court concludes that abstention in this case is not appropriate. The Court concludes that there is no pending state action with which this Court would interfere. Plaintiff's criminal trial ended months ago and the Georgia Court of Appeals recently affirmed the conviction. Plaintiff, however, filed a motion for return of physical evidence over one year ago, apparently pursuant to O.C.G.A. § 17–5–54. That code section provides a summary mechanism by which the *government entity* may seek a court order to dispose of property, and provides no mechanism for, nor places any burden on the property owner. Defendant notes that Plaintiff has not moved for a hearing. This Court notes, however, that Uniform Superior Court Rule 6.4 provides that motions (with exceptions not relevant herein) shall be decided without a hearing, unless the court orders otherwise. The Court also notes that, constitutionally, Plaintiff can have no burden to press for a hearing. Further, O.C.G.A. § 15–6–21 provides that superior courts should decide motions within 90 days. The ninetieth day after the filing of Plaintiff's state motion has long since past. The Court concludes that the state criminal action against Plaintiff is completed; and further concludes that Plaintiff's 17–5–54 motion does not constitute a pending state proceeding for purposes of *Younger v. Harris* analysis.[5]

More importantly, with regard to obscenity the state may not constitutionally place any burden on Plaintiff to seek judicial review. The Court concludes that, even if Plaintiff's motion constitutes a state proceeding to determine obscenity as Defendant argues, such proceeding is wholly inadequate to meet the constitutional requirements. *See Freedman v. Maryland,* 380 U.S. 51, 58–60, 85 S.Ct. 734, 738–40, 13 L.Ed.2d 649 (1965); *Blount v. Rizzi,* 400 U.S. 410, 417, 91 S.Ct. 423, 428–29, 27 L.Ed.2d 498 (1971). A 17–5–54 motion as Defendant seeks to apply it in this context must be likened to a "scheme of administrative censorship." *See Blount,* 400 U.S. 410, 91 S.Ct. 423, 27 L.Ed.2d 498. Such a scheme must: "(1) place the burdens of initiating judicial review and proving that the material is unprotected expression on the censor; (2) require 'prompt judicial review'— a final judicial determination on the merits within a specified, brief period—to prevent the administrative decision of the censor from achieving an effect of finality; and (3) limit to preservation of the status quo for the shortest, fixed period compatible with sound judicial resolution, any restraint imposed in advance of the final judicial determination." *Blount,* 400 U.S. at 417, 91 S.Ct. at 428; *see Skyywalker Records, Inc.,* 739 F.Supp. at 603.

The Court concludes that, as the Defendant would apply it in this case, 17–5–54 would violate all three prongs of the standard. In this case the mechanism placed the burden on Plaintiff; did not ensure, and did not achieve, a prompt judicial review; and did not maintain the constitutionally required status quo. The Court acknowledges these short comings are not the "fault" of the statute. The statute itself places a burden on the state, has time limits and calls for judicial review. The Court simply concludes, that as argued by Defendant and as conducted by the Plaintiff and state, the 17–5–54 mechanism does not help Defendant in this obscenity case. The Court notes that had Defendant properly taken possession of Plaintiff's materials, Plaintiff would have had no recourse for their return.

The Court further concludes that even if Plaintiff's 17–5–54 motion is a pending action, Younger abstention is not available because Plaintiff's constitutional concerns will not be addressed. That statute merely provides a

---

**5.** The Court notes that the state court judge invited Plaintiff to file a separate action seeking return of his materials. *Cf. Glickstein v. Sun*

*Bank/Miami, N.A.,* 922 F.2d 666 (11th Cir.1991) (state law envisioned collateral proceedings).

summary mechanism to dispose of property in the custody of police or prosecution. Plaintiff's Fourth Amendment and First Amendment claims would not be addressed to the Court in that proceeding. Furthermore, the Court concludes that the state court to which the Plaintiff addressed his motion has *twice* declined to address Plaintiff's constitutional concerns, and in fact told Plaintiff to instigate a separate proceeding if he wished to regain his materials.

The Court is troubled by Defendant's arguments in his motion. He urges the Court to abstain on *Younger* grounds, arguing that a state proceeding akin to criminal proceedings is pending in state court. The Court concludes, however, that the determination which that proceeding should make—whether the materials are obscene—is one that should have been made before, or *immediately* after, the seizure. In other words, a failure to hold the precise type hearing Defendant argues is pending is the reason Plaintiff has a colorable Fourth Amendment claim.

### *RETURN OF MATERIALS*

▆ Plaintiff seeks a declaration that the seizure on November 1, 1991 was unconstitutional and an injunction requiring Defendant to return the materials. Plaintiff did not cross move for summary judgment. The Court, however, orders Defendant Lanier to return the materials seized from Plaintiff's former place of business within ten (10) days or show cause why Defendant should not be held in contempt. *See Gable v. Jenkins,* 309 F.Supp. 998, 1001 (N.D.Ga.1969), *aff'd,* 397 U.S. 592, 90 S.Ct. 1351, 25 L.Ed.2d 595 (1970); *Cinema Classics, Ltd. v. Busch,* 339 F.Supp. 43, 49 (C.D.Cal. (1972), *aff'd,* 409 U.S. 807, 93 S.Ct. 105, 34 L.Ed.2d 66 (1973); 18 U.S.C.A. § 401.

The Court concludes that, given the posture of the case, there is no *permissible* mechanism whereby the materials in the possession of Defendant may be declared contraband. The Court notes that there is no pending prosecution regarding the materials; therefore, the state has no interest in retaining them. Moreover, because they were illegally seized, the state cannot have those materials admitted in a future prosecution. *Roaden,* 413 U.S. at 506, 93 S.Ct. at 2802–03 (1973); *Smalley,* 138 Ga.App. at 447–48, 227 S.E.2d 488; *Hall,* 139 Ga.App. at 489, 229 S.E.2d 12. The Court concludes, therefore, that a fact finder will not have an opportunity to declare the materials obscene. The Court also concludes that an adversary hearing on the materials at this point will not pass constitutional muster under *A Quantity of Books.* A post seizure hearing at this late date is simply inadequate, as established by the several case cited above. The Court concludes, therefore, that the Defendant cannot, at this point, constitutionally retain the materials, even assuming they would be declared obscene, and thus contraband. *See Skyywalker Records,* 739 F.Supp. at 603 (cases cited).

The Court notes that the state court before which Plaintiff's criminal action was pending invited Plaintiff to file a separate action seeking return of his materials. Plaintiff has done just that—in the form of a section 1983 action in federal court.

### *CONCLUSION*

Accordingly the Court **DENIES** Plaintiff's Motion to Compel, **DENIES** Defendant Lanier's Motion to Extend Discovery, and **DENIES** Defendant Lanier's Motion to Dismiss or Abate. The Court **ORDERS** Defendant to return the seized material within ten (10) days or show cause why a contempt order should not issue.

IT IS SO ORDERED.